Cases 24-1264 and 24-1265, State Farm Fire and Casualty Company v. Daniele Giannone et al. Argument not to exceed 15 minutes to be shared by the appellants and 15 minutes for the appellee. Counsel, when you're ready, you may proceed. Good morning. May it please the Court. Beth Whitman appearing on behalf of the defendant, Mr. Giannone. In this case, it's our position that the district court erred in granting summary judgment when the policy of insurance does, in fact, cover accidents and that falls within the term of the contract for an occurrence. And here, where there was an accident based upon the fact that my client, Mr. Giannone, was using self-defense in defense of not only himself but also defense of others. I find self-defense hard here because he went back in the house and got what appears to be another firearm and then came out. He did. And you have to be in imminent fear of death. And when he's in the house, how is he in imminent fear of death? His family members were still outside at that time. When he does come outside, he does not come out, you know, shooting. He comes out and then does not start shooting at the vehicle until Mr. Malachone puts his hand out the window of the vehicle and starts shooting at him again. So Mr. Malachone, under those circumstances, was again the aggressor. So under those circumstances, I think it's still acceptable for it to be self-defense in defense of others under the facts here. But there's three provisions. Yes. There's the accident. There's the coverage provision that's accident.  There's an intentional act exclusion.  And there's a self-defense exception to the intentional act exclusion.  What is the relationship between the three of them? Because you have to have an accident that's intentional but is self-defense. Correct. And I think that's precisely what we have here. You know, when we look at what an accident is, it's something that's unexplained, unexpected. That's exactly what self-defense is. This was not – he did not go out looking for an altercation. This altercation came to him. It was a situation that was imposed on him that could have caused grave danger. If it's a specific incident, you're shooting a gun into a car and somebody gets shot. That doesn't seem like an accident to me. I mean, it might be the wrong person.  Why is that not like the arson case where the fire just spreads more than you thought it was going to spread? I think because we have an issue of self-defense. When you have an issue of self-defense, the intent isn't there. But what – Your intent – I'm confused. Again, I'm just using the order of operations. I'm trying to figure out if it's an accident first. The self-defense is over here. I've got to have an intentional act. Then it's an exception. So why – what is the self-defense aspect? How does that affect the accident? Because an accident, if it's intentional, then either the act itself or the consequence. Then we know that that's not covered. But if we have an intentional act, because we know under the case law it doesn't have to just be an unintentional event. Do you assume everything that occurs is an accident to get by the accident prong? No, I don't think so. But I think here where you do have a legitimate argument with respect to self-defense, then you do have – you have to then look at, okay, so we have self-defense. There's no intent then to injure this person. The intent is to protect yourself and to protect others, not to hurt other people. Do you see what Judge Nalbandian is saying? That seems downstream of the first question. I think what – the other way that I think we should look at it is that the contract is actually – the way that it's written, it actually supports the fact that a self-defense is going to be an accident. There's no other way to make all of these provisions make sense. Because if a self-defense act is a non-intentional act, you do not intend that consequence, that it has to be an accident. It has to be an accident, and then it can't fall within the intentional act exception because we have the – I'm sorry, the intentional act exclusion because we have the exception to that where there is self-defense. Is there Michigan law to support your argument? There is no Michigan Supreme Court case that has had the type of policy that we have here. There are all sorts of cases that talk about the intentional and – intentional act exclusion. But there is nothing that has this exception to it where it is for self-defense. So we don't have the type of situation that we have here. Most of the Supreme Court cases from Michigan say self-defense is precluded under the intentional act exception – or exclusion. It seems to me that's a problem for your position. But it's interesting, though. I think this is an issue, then, of first impression because this is – no other policy that the Supreme Court has seen in Michigan contains this language. And if it does contain this language, then it gets rid of all of the problems that the Supreme Court had with whether or not self-defense is going to be, in fact, something that is excluded under the policy as an intentional act. And so are you saying that if someone acts in self-defense, they don't have the intent to cause harm? That is correct. That's exactly it. The intent is to protect. And there's – the cases that I cite in my brief, that's exactly what they say. It's the – I'm going to miss – But you're not – right? You're not arguing self-defense in the traditional sense. You're arguing defense of others. Defense of others, too. Absolutely. I mean, he was – also, my client was shot twice by Mr. Mallory. I understand. Yes. But once he went back out on his own volition, the only way he can go back out is if you have a defense of others. That's correct. And in the video, his sister and his father are out there. He wasn't sure if they were out there at the time, or maybe he knew that they were out there at the time. He also knew his pregnant fiancee was inside the house along with other children. They were hiding inside the home. But he wasn't shooting until he came back out. That is true, but he did start shooting at my client again, and my client only at that point. But what do we do with the fact that your client instigated – because he's backing out of the driveway in the video. Sure. And your client comes back out while he's backing out. So he's reinstigating when the threat has abated. But I don't know that we necessarily know that. There's no evidence, to my knowledge, in the record that he comes out brandishing the weapon or shooting again. Self-defense is pretty narrow. Sure, but defense of others, I think, is much more broad. And the other point that I think it's necessary to make is that if there is any doubt as to whether or not there is coverage under the policy, the doubt has to go in the favor of the insured. So if there is any question that this policy, in fact, has a duty to defend and indemnify, then it has to go to the insured. So here, the underlying allegations – At least the duty to defend. The duty to defend, absolutely. I mean, if you went to trial and they found you weren't acting in self-defense, they don't have to do that. They don't have to then indemnify. I would agree with that, absolutely. But under these circumstances where you have maybe even an imperfect self-defense or defense of others, I think the policy language would still apply under the circumstances here. And I think, too, policy would support this as well. We have a policy in Michigan that we are going to – it's not a wrongful act to defend yourself, to defend others. Under those circumstances, we should then afford coverage – sorry, coverage should be then afforded under the policy because we have this right to defend yourself, right to defend others. But that wouldn't override the policy language. No, but it would show that this language, the accident, intentional, and then exception to the intentional would be – I mean, what if you were waving around your gun to ward off somebody and you fired a couple of shots this way and you just happened to kill somebody? Sure. That accident, but I intended to pull the trigger. You intended, sure. I was in self-defense, so maybe I run the table of all three. But if I'm specifically – this is just a transferred intent type situation, right? I'm shooting at a car that I know has two people in it, the one person that I'm defending myself against, and an innocent person, and the innocent person is killed, that seems to be a different situation than my hypothetical where I'm just waving the gun and firing shots off. But I still think that because in self-defense the intent is not to injure others, the intent is only to protect yourself or the people that you have with you, that that intent – It doesn't matter who I kill. It's always – That is correct. It is an accident under those circumstances. So every self-defense is an accident? I think under the policy, unless there is some sort of finding. Do you have cases that say – I didn't read the cases. No, because the case law from Michigan, again, it all holds with respect to self-defense that that was an intentional act. That that was what? I'm sorry? Intentional – it would fall within the exclusion for an intentional act. Not an occurrence. It's not an – they don't get to the occurrence issue. The Supreme Court has never actually held – The lower courts have. Lower courts have. That is correct. They have held that there was an occurrence, but it's unclear in those cases whether or not they either rejected it outright because they didn't think that this was actually self-defense, but yes, the Supreme Court has not dealt with the occurrence issue with respect to self-defense, but has solely looked at it with respect to the exclusion. I think your time is up. Yes. Okay. Thank you, Counselor. Thank you. You'll have your rebuttal. Okay. Thank you. Good morning, Your Honors. If it pleases the Court, my name is Bill Boyer. Just so the Court understands, I am the attorney that represents the estate of Kim Mollicone. We're involved in this tragic accident – this tragic incident. All I wanted to address, because Ms. Whitman, I think she addressed all of it very eloquently and covered all of the main issues. Just so I'm clear. Sure. You're suing her client. That's correct, Judge. And you're arguing today that he was acting in self-defense? I knew that question was going to come up. Because in this particular case, I want the Court to understand, and as you know, intended or expected is one of the exclusions, but it comes back in if there is self-defense of yourself or others. We know that. That's not a dispute. That's in the policy. When I was flying down here last night, I was trying to think of what kind of analogies could I tell you to make my point. And I think one that I came up with is in a golfing scenario. You could be a good golfer, and if you're teeing a ball off on the tee or hitting a fairway shot, you're aiming your ball at the flag, and the stick that's on the green, all of a sudden you hit an errant shot and hit somebody next to you. That is an accident. You never expected or intended anybody else to get hurt. You didn't aim at them. But that's different. When you have bad intent, then as Judge Nalbandian said, transferred intent applies. So the question is, if he had bad intent in shooting at A and accidentally shot B, we treat it as an intentional act. I understand. When you hit a golf ball, you don't have bad intent. It's the same here because we don't have bad intent of Mr. Giannone. Remember, as Ms. Whitman pointed out, he didn't come out just to start guns. It doesn't have to be bad intent. It just has to be intent. I understand what you mean, yes. So the intent is to shoot into a car with two people in it. Right. The probable consequence of your action is somebody is going to get hit with a bullet. No, that's true. But like Ms. Whitman pointed out, this is not a situation where Mr. Giannone came out guns a-blazing and started shooting. His family was still out there, and he had every legal right to defend his family who was still outside. How are you going to ultimately recover from him? There are still other things he could have done that may have been considered unreasonable or reasonable. But when he's defending his family, he didn't shoot at Mr. Mollicone until Mr. Mollicone was shooting at him. He was not planning on shooting back. He wanted to go outside to make sure his family was okay, but then he starts shooting back. Now, maybe he could have done something differently by staying in the garage. Who knows? But that's for a jury to determine, not the judge as a matter of law, as to reasonableness in the negligence action. So he didn't start shooting until after Mr. Mollicone put his hand out the window and started shooting back, which, in this particular case, under the contract, the self-defense of others, the reasonable self of others, falls in. Again, all we're saying is it's not a decision, a proper decision to make as a matter of law. Well, I'm curious about that question, too. You're saying it goes to a jury to interpret the contract? That's never been true. No, not to interpret the contract, but if there is reasonableness, if a standard is reasonableness, that's always – Well, that's the – but not coverage. Where does reasonableness work into whether there's coverage or not? Well, there's – excuse me. Guys, the argument is that this is an accident, and because of – there was no intent on the specific consequence, right? You're saying that because the consequence wasn't intended, that's the narrow view that you have of what an accident is, right? I mean, that's – Right, and it's a subjective standard in Michigan. Subjective. Not objective. It is subjective. Shouldn't he have reasonably expected the consequences? He, under this – at this – I don't think – it all depends, Judge, because this was a situation where some guy came in, started shooting everybody, and you've seen the videos. It was chaotic. It was chaotic. He knows that his family is out there. He is a good marksman. He is a – not professionally, but out in this area of Michigan, he's a hunter. He goes to the gun range all the time, and he is experienced, and he is shooting only at – there's no dispute that he's only shooting at Mr. Mollicone because he's shooting back. Why doesn't the arson case then just kind of take care of your argument? Well, I – I intend – I didn't intend to burn these buildings down, only this building, but I burned those buildings down. Right, because – I mean, that's the same situation, isn't it? Well, because – no, because the people that burned the building were already – they were committing a crime, what I'll call a bad act. But it's not – I don't understand why we care about whether it's bad or whatever. It's just what is the act? The act is shooting. Yes, that is the act. Yes, I agree. I agree. Whatever. So what consequence did you intend? It seems like if the consequence is essentially not separable from the one that you actually intended. So I intended to burn a building down, but not this building. I intended to shoot this person, not this person. It's the same thing. Well, I think it's very distinguishable because I think what's more akin to this is the McCarran case where the person thinks the gun is loaded and it's not. They don't – he's not intending to shoot somebody. He's intending to shoot them, but with an unloaded gun. Right. It turns out to be loaded. Well, I don't – Yes. Because that person is thinking they're shooting an unloaded gun. Yes. So, okay, it's an accident. You didn't think there was a bullet in there. There was. But I'm burning down – I intend to burn this house down, not this one. So I burn this one and this one burns down. But I think it goes to the intent. The McCarran case shows he didn't intend to hurt this person. Just like Mr. Giannone did not intend to hurt Ms. Mollicone. He was only defending against Matt Mollicone, who is now convicted. My reaction to that, counsel, is it's not really – that's not really the question they were asking. The question is reasonable foreseeability. Okay. Over here, it's – intent is a little bit different. In Mr. Giannone's mind, and it's a subjective standard, unequivocally under Michigan law, all the evidence and on the record is he never intended – he didn't think she was going to get hit. It was only Mr. Mollicone because it was a shooting. So I think that is why there was an error by the district court judge, because it's a subjective standard unequivocally in Michigan. All right. Thank you, counsel. Thank you very much. I appreciate the time. It was a pleasure being in front of you this morning. Good morning, Your Honors. May it please the Court, Kerry Berlin on behalf of the Plaintiff State Farm Fire and Casualty Company. I thank Your Honors for all your questions to the other side, as I think those – obviously you've read everything and we appreciate that, but I think we're – I think they're trying to probably intentionally conflate two different issues here. So there is, as Judge Nelbandian said, there is the occurrence definition, and then there's an exclusion for expected or intended acts. State Farm did not assert the expected or intended acts exclusion when it filed its declaratory action. It did not argue its motion for summary judgment on that provision, because there is the self-defense exception to that exclusion. However, you don't get to the exclusions because the occurrence definition is what controls this, because that was what the – But why isn't it relevant? Because it seems like, you know, we read the contract as a whole. Correct. And we have an accident provision, and we have an intentional act exclusion, and you're trying to figure out what is it that could possibly be an accident, but then also be intentional, because you want to give effect to every provision in the contract. So what is the theoretical case that would actually run the table when it would be an accident, would be an intentional act, and it would also be self-defense? Why isn't this the case? This is maybe the case that could actually run the table. I think because of the way the definition of occurrence is listed, and the interpretation of it where it says it's when your intentional acts, either when you intend to commit or to create or cause bodily harm, or if your actions create a direct risk of harm. So you'd have to have a situation where you weren't trying to harm anybody. Somebody got, as you were trying to defend, like you ran out and somehow injured him as he was running out to protect somebody, would potentially be a situation that could apply, but I don't think we actually get there because we have to get past the occurrence first, and we don't ever clear that in this case. As you said, if you intend to... Aren't you constraining it in an absurd way? It seems to me that would be a very, very narrow category then. Possibly, correct. Right, because you're saying that to figure out whether there's an occurrence, you almost have to have like a hurricane, there's an accident, someone breaks into your house and you kill them. They come to steal your stuff and you shoot them. Is the hurricane the accident? The hurricane destroys half the house, then people are coming to... So now you have the accident. To loot or something. To loot, and you defend with your gun. Yeah, I don't think that would be an occurrence. And again, they're trying to add language. They're trying to add an exception to the definition that isn't in the contract, and the contract is supposed to be read as interpreted, as written. And it's really, as I think Judge Nalbandian mentioned at first, it's kind of like steps. So step A is do you have bodily injury or property damage? We do have that here. Step two is was it the result of an accident? And if that answer is no, the exclusions don't really matter. What about the hypo that I had that, okay, what if I intend to scare you away and I'm waving my gun around and I fire off a couple of shots and I kill somebody over there? Did you intend to pull the trigger? I intended to pull the trigger. And if there are people in... I didn't know who was over there. I just intended to scare you. It doesn't matter if you're intending to kill that person, if you're intending to shoot anybody, or if you're intending to shoot and you create a direct risk of harm. Is that an accident? What I just did, is that an accident? It depends on the situation. Like, do you know the people are over there as you're shooting in their direction? I'm just trying to find a hypothetical that's not this case that would actually run the table. If you came outside and just shooting to try to scare them off and you didn't know anyone was... If you thought he was over here and you didn't know there was someone over here, arguably that could be an accident. But if you, in this case, you fired... If you can't give me some scenario that would run the table, I'm then very skeptical about your reading of the context. Just as a common sense matter. I'm not saying that I would rule their way, but I'm just saying, if you can't give me an example, I'm kind of skeptical. I think the one we just did is, if you saw someone coming to loot... I'll try to use both your hypotheticals. So you see someone coming to loot, and to do that, you shoot a gun over their head to try to scare them so they don't come in. So they know there's somebody in here, and then that hits somebody that you didn't know was out there. I think that would fit. Better, at least. I don't know if it's a perfect fit. I'm not trying to be funny. I'm just trying to say that there's a lot of facts that have to go into these things. I understand. You don't want to be stopped when this happens next week in Michigan and somebody says you just did that. Exactly. We'll stipulate that you're not going to do this. I don't remember which judge asked it, but I think we can go past intentional, and then there's also this creating a direct risk that bodily injury will occur, and shooting into an occupied vehicle. I cited multiple cases from different places, including one from, I think it was Kansas, where it was an ex-husband who was angry and his wife was in a car with another man. The case law said the fact that he couldn't see who was in there and he just fired two shotguns into the car, killing the wrong person, or hitting the wrong person, I should say. You have defense of others, right? So that's their argument that distinguishes this. Go ahead, I'm sorry. And that applies to the intentional acts exclusion, which is not what we're talking about. There is no exception to the occurrence definition in the contract. And you can't enter or add language to a contract that doesn't exist. The contract says it defines an occurrence, in broad terms, as an accident that results in bodily injury or property damage. You're saying, I take it, that the self-defense aspect of any of these cases doesn't really matter for purposes of whether it's an accident or occurrence. Correct. And in the Century Mutual Insurance v. Paddock case, which is on page 26 of my brief, the insured engaged in a fight, and they, I'm sorry, it was a case where they said it doesn't matter if self-defense, it doesn't matter if they were acting in self-defense. It's does your act create that direct risk of harm? And so all the cases, the Bosney case itself is a fight where two people got involved and they tripped somebody. I guess what I would say is, I suppose I would agree with that. If there could be meaning given to all of the provisions, if it turns out that there really couldn't be, then the self-defense aspect might make a difference to the accident inquiry. That's my point about if I can't figure out how these provisions work together, and I understand you just want to isolate the one, but I don't think we can do that. I think you have to, in this case, because, again, it's steps. So you have to get past the occurrence part first before you get to the exclusions. Read the contract as a whole. Correct. We don't need them to yield absurd results. It's common sense. There's context. I'm not making stuff up. You do read it as a whole, but you also can't add language. So what the appellant is trying to do is add the same exception to the intentional acts exclusion to the definition of occurrence, and it just isn't there. So, again, there is certainly going to be a situation where it would be an accident that would apply. What's the difference between the arson case and pointing the unloaded gun, what gun you thought was unloaded and pulling the trigger? It's the intent to injure or the creating a direct risk of harm. So if you are shooting an unloaded gun at somebody, you aren't intending to hurt them. You can argue you're not creating a direct risk of harm. You're going to the intentional act, right? I'm sorry? You're going to the intentional act, right? So are you assuming there's an occurrence? No, I think it's an accident, because you're pulling the trigger of a gun that's not supposed to fire because there shouldn't be a bullet in there. So that's an accident. You're looking at the person's intent to determine if there's an accident. Correct, and the court said you look at it from the standpoint of the insured, not the injured party. So Mr. Gianone comes outside, sees Mr. Malico, and intends to shoot into an occupied vehicle. Again, the shooting had stopped. He had gone inside. The shooting had stopped. That's a different argument. So he came outside. He created the second gunfight. Your argument is defense of others there. Correct, but as Your Honor said, it has to be reasonable. And again, the shooting had stopped. They're in their car. They're backing out. They're leaving. He comes outside, and that starts the second gunfight. So the first gunfight is Mr. Malicone coming up saying, stay away from my wife, Mr. Gianone. He says he sees the gun. He pulls his gun out, shoots over Mr. Malicone's head to warn him, scare him, whatever you want to call it. And that starts gunfight number one. Mr. Gianone is hit twice, goes inside, gets a second gun, comes back outside as they're leaving, and then the second gunfight begins. But for purposes of the accident or occurrence inquiry, I take it the only thing that really matters is shooting a gun into a car that has two people in it.  Is that? Correct, because you're intending, so as you mentioned. All the rest of this would be relevant if we, if you ever got to the self-defense exception because it's a reasonable decision? If State Farm had asserted it, which it did not in this case. Okay, but I'm just saying. Right, but yes, correct, correct, yes. Okay. And I think you also have to look at it where, so he intended to kill, or I shouldn't say kill. He intended to injure Mr. Mollicone by shooting at the car. He hit the wrong person. But as I said, it doesn't matter, and there's case law, as cited in my brief, that it doesn't matter if the harm is different to a different person. As the arson building example in Masters where they do set fire to their own building, it injures the building next door. So they intended to cause property damage. The property damage then occurred to a separate, to I guess an innocent building, and that was still not found to be covered. Just so I'm clear, I think it's an easy question, but a person comes in with a gun into your house and shoots, you shoot back and kill them. Yes. You get sued. Does State Farm have a duty to defend? Probably not. It would not be an occurrence. And I think that's what the case law has said throughout. And again, as the appellants acknowledge, there is no Michigan court that has found that, or at least appellate court, that has found that acting in self-defense transfers something to an occurrence under a liability policy. And I think the case, I cite it from Washington, the Safeco v. Young case where it said the law will not countenance one intentionally shooting someone and then saying he or she did not intend to hurt the injured person, making it an occurrence. What about your friend's argument on the other side, that self-defense changes the nature of the intent? That would be changing the contract to what it doesn't say. So I think it's adding, again, it's trying to add an exception. You're saying the occurrence has to be analyzed and isolated. Correct. And again, as Judge Nobandy said, it's steps. So you look at was there an occurrence? So was there an accident that resulted in bodily injury or property damage? That's first. I'm struggling, maybe you all have come up with this perfect hypothetical, but I'm struggling as to how the exclusion would ever kick in in a self-defense situation. And I think the example, the best we could come up with, if you see your example, so there's a hurricane, you're in your house, the hurricane happens, and now you hear someone coming to loot you or you think someone's coming to loot your house. So to warn them off, you fire a gun in the air, and it happens someone was above you and got hit, like you were maybe on a two-floor whatever. That would arguably be an accident because you didn't intend to hurt anybody. You were intending to shoot in the air. You hit somebody. If I shoot at them because I'm allowed to under Michigan law. Right. And hit the wrong person. Let's say I hit the right person. You're saying not covered. No duty to defend when there are statesmen. And that's what the case law says, that self-defense is not a way to get around the occurrence requirement of an accident. Because, again, everybody that engages in a fight would say, oh, it's an occurrence. See, I'm wrong. It just seems weird to me that it's an exclusion in a policy from an occurrence, and yet it almost would never kick in. Well, I mean, it's a rare factual scenario, I agree, but it doesn't make, well, A, it wasn't argued that it was ambiguous, but B, it doesn't make it ambiguous. It means that you have to, if you go in order, I think it makes better sense than if you're trying to say, okay, well, because you can't say, well, self-defense kicks in for the intentional acts if you don't have an occurrence first. The occurrence has to occur, because if you don't have an occurrence, you don't get to any exclusions. But these cases, I'm sorry, Judge Ritz, go ahead. If we get to the self-defense point, is there a genuine issue of fact about whether self-defense applied here? I don't believe so, because I would say yes, if State Farm had said we're not going to defend you under the expected or intended acts exclusion. Then I would agree that was Mr. Gianone's actions reasonable when he came back outside, everything else, that I think would come into whether or not it was self-defense, and the exception to the exclusion apply or doesn't apply based on how that comes out. But we don't get to that part, again, because of the occurrence part first. Yeah. I guess what I'm asking is, is it your view that the record shows that it was not reasonable force as it stands? I don't believe the record in this case or in the underlying case? In this case. I think you, well, as I said, the argument from the estate in the complaint is that his returning outside was a, I think they called it negligence, but was a wrongful act to come back outside after the shooting had stopped and he had gone back inside. So in that situation, I think you could, if that was, if the expected or intended acts had been asserted, then I think that would have to be the question of fact as to whether or not his actions were reasonable. But, again, we just don't get to that exclusion. And that's why it wasn't argued in the district court. It wasn't part of her decision in granting State Farm's motion. It's an issue that they brought up that, again, just wasn't argued. Unless the court has any other questions, I'm out of time. Thank you, Counsel. Thank you. I, very briefly, I just wanted to be very quick. The McCarn case, I think, talks about, the Supreme Court talks about how, you know, when you're looking at the meaning of accident, they recognize it's more problematic when you have an intentional act by the insured. But it certainly doesn't foreclose an intentional act from becoming an accident. They said it can still be an accident if it's not reasonably expected. So it can be an intentional act and still fall within an occurrence. And even in the Masters case, which is the arson case, the focus of the term accident has to be on both the injury-causing event and its relation to the resulting property damage or injury. So it can either be intended or should be expected, which I think follows exactly what the policy language does here. You could have an accident that can result or could be resulting from an intentional act, but if it's intended or expected, then it is excluded, except where there is a self-defense type of situation. So I think the case law is consistent entirely with the way that the policy language reads in this case. So that was the only point that I really... But what about the self-defense cases that say that it's not an accident? Your friend on the other side, I think he's right about that. Those self-defense cases just stop at occurrence. They don't stop at occurrence. They stop at intentional act. They skip right over occurrence and they go directly to intentional act and they say this is an intentional act, it's therefore excluded. What we have here is an entirely different policy. We have that exception language, which was not... But, I mean, a case could do that because there's no self-defense exception, which I think this... I didn't see any cases that involved all three of these provisions, right?  So if I'm just thinking it's either no coverage or an intentional act exclusion, I could pick either one. But here, because no Michigan Supreme Court case has... Or I don't think court of appeals case has identified the type of situation that we have here where we have this policy language, it's not going to be excluded under the intentional act exclusion. Can I ask you about McCarn? Because in that one, I thought it was Judge Nalbandian's hypo, where he thought he didn't... When he pointed at his friend's head, I'm sorry to point at you, but he thought he didn't have any bullets in the gun. Correct. That's correct. So isn't that different? I mean, because then it goes back to the hypo Judge Nalbandian keeps coming back to, the waving of the gun. It's the same similar circumstance. Whereas here, that doesn't occur. It doesn't occur, but we still have something that takes away intent. We still have the defense of self, the defense of others. And the intent, again, is not to harm, but rather to protect. So because of that, I think that's the distinguishing factor here. Okay. Thank you. Thank you very much for your thoughtful argument. Thank you. Counsel? Just briefly, to be honest. I was, again, trying to come up with some analogies. And, again, dealing with the expected or intended, which there's no dispute, that is a subjective standard. I was trying to think a situation where somebody is maybe even at a gun range and shooting at a target of some sort with any kind of weapon, and there's people around that are maybe nearby. I'm not a gunsman, so I don't know how that works, but I'm just trying to think. It may be far out there, but if somebody is shooting at a target, somebody is maybe close by, some passerbys or something, and it ricochets and hits somebody, I don't see how that could be considered expected or intended as to the person who actually got the ricochet bullet from the person who was shooting at a target and never had any intent to shoot that person. So I think that is another example of why here there was an accident and it was not expected or intended. Only the act was of pulling the trigger to shoot at Mr. Mollicone by an experienced gunman. Okay?  Thank you very much again, Judge.  Pleasure, Judge. We appreciate the arguments. The case will be submitted.